# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KENNETH D. BURTON, | ) |
| Plaintiff, | ) |
| | ) 03 C 5303 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| USF LOGISTICS, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Kenneth Burton ("Burton") has sued USF Logistics ("USF") for race and color discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Before the Court is USF's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons provided in this Memorandum Opinion and Order, the Court grants the motion.

## FACTS

USF provides nationwide warehousing and distribution services to customers in several industries. (Def.'s LR 56.1(a)(3) ¶ 1.) USF maintains a distribution facility in Bolingbrook, Illinois. (*Id.*) Burton, an African-American male, worked at that facility from June 2001 through his discharge on August 29, 2002. (*Id.* ¶ 2.)

On Saturday, August 24, 2002, Burton's immediate shift supervisor was Dave Hohman ("Hohman"). (*Id.* ¶ 3.) Hohman reported to Operations Manager Darrin Stotts ("Stotts") who, in turn, reported to the facility's Service Center Manager, John Byrne ("Byrne"). (*Id.* ¶ 4.)

On Saturday, August 24, 2002, Burton told Hohman there was an emergency and asked

him what was the earliest time he could leave. (Def.'s LR 56.1(a)(3) ¶ 5; *see* Def.'s Ex. C, Burton Stmt.) Hohman told him that everyone would be there until 4:30 p.m. (Def.'s LR 56.1(a)(3) ¶ 5; *see* Def.'s Ex. B, Hohman Stmt.) Burton asked Hohman again what was the earliest time he could leave. (Def.'s LR 56.1(a)(3) ¶ 5; *see* Def.'s Ex. B, Hohman Stmt.) Hohman told Burton that if he had an emergency at home and had to leave, he should do what he needs to do. (Def.'s LR 56.1(a)(3) ¶ 5; *see* Def.'s Ex. B, Hohman Stmt.) Hohman then asked Burton if he could work or not. (Def.'s LR 56.1(a)(3) ¶ 5; *see* Def.'s Ex. B, Hohman Stmt.) Hohman alleges that Burton proceeded to get very close to him with his arms open and started screaming at him and saying, "What do you mean I can't work?" (Def.'s LR 56.1(a)(3) ¶ 5; *see* Def.'s Ex. B, Hohman Stmt.) Hohman started to say that he was referring to if Burton had an emergency, but before he finished his sentence, Burton pushed into Hohman and Hohman told him not to push him, but Burton did it again. (Def.'s LR 56.1(a)(3) ¶ 5; *see* Def.'s Ex. B, Hohman Stmt.) Hohman told Burton to go home. (Def.'s LR 56.1(a)(3) ¶ 5; *see* Def.'s Ex. C, Burton Stmt.) Burton asked Hohman if he was fired and Hohman told him he was only making things worse and should leave immediately. (*Id.*) Burton denies that any physical contact or violence occurred during this incident. (Pl.'s Resp. Def.'s Mot. Summ. J. at 1.)

On Saturday, August 24, 2002, Hohman called Stotts to report that he had sent Burton home that morning for yelling at him and physically bumping into him during an argument over leaving work early. (Def.'s LR 56.1(a)(3) ¶ 6.) Hohman told Stotts that he had found Burton's behavior physically threatening. (*Id.*) On Monday, August 26, 2002, Stotts spoke with Hohman about the incident again, and Hohman gave Stotts a written statement describing what happened. (*Id.* ¶ 8.)

On Tuesday, August 27, 2002, Stotts and Operations Manager Tom Diamontos

2

interviewed Burton to get his version of the incident with Hohman. (*Id.* ¶ 9.) Burton had prepared a brief statement of the incident with Hohman which he gave to Stotts during the meeting. (*Id.*) When questioned by Stotts, Burton denied ever touching or pushing Hohman. (*Id.* ¶ 10.) Burton never complained to Stotts that he was being treated unfairly because of his race; nor did he give Stotts any examples of other employees who had fought with each other or argued with their supervisors and had not been disciplined. (*Id.* ¶ 11.)

After considering the statements and interviews of both Hohman and Burton, Stotts determined that Hohman's story was more credible and that discharging Burton was necessary to demonstrate that the company would not tolerate aggressive behavior in any form – especially toward management. (*Id.* ¶ 12.) Stotts recommended to Byrne that Burton be discharged for insubordination, and Byrne approved that decision. (*Id.* ¶ 13.) The August 24, 2002 incident between Burton and Hohman was the only report of a physical confrontation between USF employees that either Byrne or Stotts had ever received. (*Id.* ¶ 14.)

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view "the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). "If no reasonable jury could find for the party opposing the motion, it must be granted." *Hedberg v. Ind. Bell Tel. Co., Inc.*, 47 F.3d 928, 931 (7th Cir. 1995). On summary judgment, the court must not weigh the evidence

submitted by the parties or determine the truth of asserted matters. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Before analyzing the parties' arguments, the Court notes the role and effect of Local Rule 56.1 in summary judgment proceedings. While Rule 56 governs the parties' summary judgment obligations, Local Rule 56.1 reflects "an attempt to make the parties' respective summary judgment obligations explicit." *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

Local Rule 56.1(a) requires the moving party to first serve and file any affidavits and other materials referred to in Federal Rule of Civil Procedure 56(e), a supporting memorandum of law, and a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law. LR 56.1(a)(1)-(3). Local Rule 56.1(b) requires a party opposing a summary judgment motion to serve and file a memorandum of law, any materials or affidavits referred to in Federal Rule of Civil Procedure 56(e), as well as a concise response to the movant's statement of facts. LR 56.1(b)(1)-(3). This response "shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon" and "a statement consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(A)-(B). Failure to properly controvert a moving party's statement of facts results in the moving party's version of the facts being deemed admitted. LR 56.1(b)(3)(B). Strict enforcement of Local Rule 56.1's requirements has been consistently upheld by the Seventh Circuit as the court is not required to "scour the record in search of evidence to defeat a

4

motion for summary judgment." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) (internal quotations omitted).

With these principles in mind, the Court notes that Burton has failed to comply with his obligations under Local Rule 56.1(b). Burton failed to respond in the manner required by Local Rule 56.1(b) to the sixteen statements of material fact submitted by USF, and thus all of them are deemed admitted. Burton filed a one-paragraph response to USF's motion for summary judgment,[1] which does not meet the requirements of Local Rule 56.1(b)(3)(A). Further, Burton's failure to comply with the Local Rules is not excused by his *pro se* status. *See Stevens v. Navistar Int'l Transp. Corp.*, 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002) (holding that even though the court reads a pro se plaintiff's pleadings liberally, *pro se* status does not excuse a failure to comply with Local Rule 56.1). Burton received notice from USF's counsel of the need to comply with Federal Rule of Civil Procedure 56 and Local Rule 56.1 and the consequences of not doing so. Having received this notice, Burton was aware of the procedures he had to follow and still failed to comply.

However, even if the Court were to construe Burton's response as an attempt to deny any statement of fact that avers that the incident on August 24, 2002 took place, the Court would still grant summary judgment in USF's favor, as discussed below.

---

[1] The non-moving party "need not tender evidence in a form that would be admissible at trial; [he] may rely on affidavits or any other materials of the kind identified in Rule 56(c)." *See Waldridge*, 24 F.3d at 921. Thus, although Burton's response is not in affidavit form, the Court may consider his response for purposes of USF's motion for summary judgment.

USF points out that Burton's response lacks any proof of service and has still never been served on USF, omissions which are in violation of Federal Rule of Civil Procedure 5 and Local Rule 5.5. Despite these violations, the Court will still consider Burton's one-paragraph response. It can hardly be argued that USF is prejudiced by the Court's consideration of Burton's response because, as discussed in this Memorandum Opinion and Order, the Court grants USF's summary judgment motion.

## Title VII and Section 1981 Claims

Burton claims USF terminated him because of his race and color in violation of Title VII and Section 1981. Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides in pertinent part: "All persons . . . shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a). "While section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993); *see Friedel v. City of Madison*, 832 F.2d 965, 971 (7th Cir. 1987).

A plaintiff may establish discrimination in one of two ways – under the direct method or the indirect burden-shifting method. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938 (7th Cir. 2003). The Court addresses each in turn.

Direct evidence of discrimination "is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). Direct evidence can take two forms: (1) "an outright admission by the decisionmaker that the challenged action was based on" a discriminatory animus; or (2) a "convincing mosaic of circumstantial evidence . . . that point[s] directly to a discriminatory reason for the employer's action." *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004)

6

(internal quotations and citations omitted).

Just as Burton has failed to present an outright admission by a decision maker that USF terminated him because of his race or color, he also lacks circumstantial evidence sufficient to construct a "convincing mosaic" of discrimination. In his response, Burton only provides one fact constituting circumstantial evidence: he denies that the altercation with Hohman ever occurred. This is hardly a "convincing mosaic of circumstantial evidence" to satisfy the direct method of establishing discrimination. Accordingly, to survive the summary judgment motion, he must proceed under the indirect method.

To establish a *prima facie* case of discrimination under the indirect burden-shifting method, Burton must satisfy each of the four elements as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). He must show that: (1) he was in a protected group; (2) he was performing according to his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees who were not in the protected class more favorably. *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 289 (7th Cir. 1999). A failure to establish any one element of the *prima facie* case is fatal to an employee's Title VII claim. *See Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004); *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 465 (7th Cir. 2002). If plaintiff is able to set out a *prima facie* case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory explanation for the action. *See McDonnell Douglas*, 411 U.S. at 802. If the employer articulates a legitimate justification for its action, the plaintiff must then establish that this reason is a mere pretext for discrimination. *See id.* at 804.

Burton cannot establish a *prima facie* case because he has failed to raise a genuine issue of material fact regarding whether similarly situated employees outside of the protected class

7

were treated more favorably. This requirement requires "a showing that two employees dealt with the same supervisor, were subject to the same workplace rules, and engaged in similar conduct, but nonetheless received disparate treatment for no apparent legitimate reason." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 940 (7th Cir. 2003).

Burton's one-paragraph response to the motion for summary judgment states in pertinent part:

> I, Kenneth D. Burton is sworn under oath, that this is a true statement under the best of my knowledge, that dock supervisor: Dave Hohman stated insubordination was used in target area of dock door (3). No physical evidence or violence occurred, or witnessed by other employees. Also camera's are monitoring the warehouse area of the employer. I simply asked to leave early for my father (Odell Burton Jr.) was diagnosed with cancer which he later proceed in death for illness, I can give documents upon request. I feel that I was discriminated because of the color of my skin.

(Pl.'s Resp. Def.'s Mot. Summ. J.)

Burton's response fails to mention any similarly situated employee outside of the protected class who received better treatment. In his deposition, Burton refers to examples of other employees who got into fights or pushed somebody. (Def.'s Ex., Burton Dep. at 87-93.) However, he has failed to show that these employees were outside of his protected class, dealt with the same supervisor, and received more favorable treatment. Further, there is no indication that USF management even knew about some of the incidents involving these other employees. *See Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 564 (7th Cir. 1998) (stating that plaintiffs failed to establish that another employee was similarly situated because the record was devoid of evidence that anyone had complained to management about the other employee's behavior whereas there were complaints about plaintiffs' conduct). Also, Burton claims not to have seen at least one of these incidents and has failed to bring forth evidence, affidavits, or deposition testimony from any of the parties allegedly involved in these incidents. Because Burton has

failed to establish a genuine issue of material fact as to whether similarly situated employees outside of the protected class received better treatment, he cannot establish a *prima facie* case of discrimination.

Even if Burton could establish a *prima facie* case, the Court would still grant USF's motion for summary judgment. USF has provided a legitimate, non-discriminatory reason for Burton's termination, that Stotts honestly believed Hohman's version of the incident, *i.e.*, that Burton was insubordinate when he yelled at Hohman and physically bumped into him during an argument over leaving work early on August 24, 2002. (Def.'s LR 56.1(a)(3) ¶¶ 6-13.)

As stated above, once the employer articulates a legitimate, non-discriminatory reason for its action, the burden of production shifts back to the employee to establish that the proffered reason is a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804. A plaintiff may show pretext by establishing that the employer's proffered reason is factually baseless, not the actual motivation for the discharge in question, or insufficient to motivate the discharge. *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 303 (7th Cir. 1996).

First, Burton has not produced evidence that the reasons proffered by USF for his discharge were factually baseless. Although Burton denies that the incident that led to his termination ever occurred, that denial, in and of itself, is insufficient to create a triable issue as to whether USF honestly believed that the incident occurred.

In *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d at 938-40, Wal-Mart terminated Adams for the sole reason that it believed she stole a co-worker's money from a lunch table in a break room. Although Adams denied that she had stolen the money, the *Adams* court granted Wal-Mart's motion for summary judgment and held that her denial was insufficient to establish pretext because Adams had not produced any evidence that Wal-Mart did not genuinely believe

9

that she had stolen the money.

Similar to the plaintiff in *Adams*, Burton denies he engaged in the physical altercation that was the sole basis for his termination. As in *Adams*, Burton's denial, in and of itself, is insufficient to create a triable issue of fact as to whether USF genuinely believed that Burton had screamed at Hohman and pushed into him. Stotts interviewed both Hohman and Burton and concluded the facts contained in Hohman's story were more believable and thus decided to discharge Burton.

Second, Burton fails to produce evidence that USF's belief that the incident on August 24, 2002 occurred was not the actual motivation for his discharge and that the motivation was instead based on discriminatory reasons. In *Nawrot v. CPC International*, 277 F.3d 896, 907 (7th Cir. 2002), where a Title VII plaintiff merely provided "self-serving interpretations of the incidents [that led to his termination] or denials that they ever occurred," the court held that the plaintiff failed to "address whether [the employer] honestly disbelieved his explanations and denials, even if incorrectly, or whether its determination that the incidents warranted termination were honestly held."

As in *Nawrot*, Burton's denial that the altercation occurred simply does not address whether USF honestly disbelieved his denial or whether Stotts and Byrne's honestly determined that the altercation justified his termination. Although Burton maintains that Hohman lied about the incident, he has made no attempt to produce any evidence indicating any discriminatory bias on the part of Hohman, Stotts or Byrne that would render Stotts and Byrne's reliance on Hohman's explanation improper. *See Alexander v. Wisc. Dep't of Health & Family Servs.*, 263 F.3d 673, 687 (7th Cir. 2001). It is Burton's burden to produce evidence showing that USF did not genuinely believe Hohman's version of the events on August 24, 2002, and he has failed to

do so. *See Adams,* 324 F.3d at 940. Because it is undisputed that USF honestly believed Hohman's version of events, summary judgment is proper. *See Billups v. Methodist Hosp. of Chi.,* 922 F.2d 1300, 1304 (7th Cir. 1991) (holding that court's responsibility is not to determine whether alleged acts occurred, but whether employer's belief was honestly held).

Third, Burton has not established a genuine issue as to the material fact of whether the incident was insufficient to motivate his discharge. The USF employee handbook stated that a violation of the violence in the workplace policy could result in discipline, up to and including termination. (Def.'s Ex. A, USF Employee Handbook at 14-15.) Burton does not dispute that a violation of this policy constitutes an adequate basis for terminating his employment.

In sum, Burton has failed to establish a *prima facie* case of discrimination because he has not created a triable issue of fact regarding whether similarly situated employees outside his protected class received better treatment. Further, he has not established that USF's proffered reason for his termination was a pretext for race or color discrimination. Therefore, the Court grants USF's summary judgment motion as to Burton's Title VII and Section 1981 claims.

## CONCLUSION

For the reasons set forth above, the Court grants USF's motion for summary judgment [doc. no. 18-1]. This case is hereby terminated.

**SO ORDERED**  ENTERED: MAR 2 8 2005

HON. RONALD A. GUZMAN
**United States Judge**